**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KATHLEEN A. INNES,

                                        Plaintiff,                          1:22-cv-00641 (BKS/TWD)

v.

COUNTY OF WARREN, WARREN COUNTY
CORRECTIONAL FACILITY, CORRECTIONAL
MEDICAL CARE, INC., CMC CORRECTIONAL
CARE, and CBH MEDICAL, P.C.,

                                        Defendants.

---

**Appearances:**

*For Plaintiff:*
Chaya M. Gourarie
Tully Rinckey PLLC
777 Third Avenue 21st Floor
New York, NY 10017

*For Defendants County of Warren and Warren County Correctional Facility:*
Lawrence Elmen
1340 State Route 9
Lake George, NY 12845

*For Defendants Correctional Medical Care, Inc., CMC Correctional Care, and CBH Medical, P.C.:*
David S. Schwartz
David S. Schwartz Law, PLLC
30 Broad Street, 14th Floor
New York, NY 10004

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

On June 14, 2022, Plaintiff Kathleen Innes filed this action against Defendants County of

Warren ("Warren County"), Warren County Correctional Facility ("WCCF") (collectively,

"County Defendants"), Correctional Medical Care, Inc. ("CMC"), CMC Correctional Care ("CMC II"), and CBH Medical, P.C. ("CBH") (collectively, "CMC Defendants"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, et seq. (Dkt. No. 1). County Defendants and CMC Defendants move to dismiss Plaintiff's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] (Dkt. Nos. 15, 16). Plaintiff opposes both motions, (Dkt. Nos. 22–24), and CMC Defendants filed a reply in further support of their motion to dismiss, (Dkt. No. 25). For the following reasons, the Court grants both motions to dismiss.

## II.    MATERIALS OUTSIDE THE COMPLAINT

Because Defendants attach exhibits to their motions to dismiss, (Dkt. Nos. 15-2, 15-3, 15-4, 16-3), and Plaintiff attaches exhibits to her opposition papers, (Dkt. Nos. 22-1 to 22-9, 24),[2] before setting forth the facts, the Court must determine which exhibits, if any, it may consider in deciding the motions. "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). However, considering "materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion." *Id.* A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*,

---

[1] County Defendants also move to dismiss WCCF as a Defendant pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), and (5) because WCCF "is not a legal person or entity with the capacity to be sued" or "the capacity to receive service of process." (Dkt. No. 15-5, at 6, 10–11). Plaintiff agrees to "stipulate to dismiss[al] [of] WCCF as a named defendant" if "Warren County remains in the action." (Dkt. No. 22, at 14). "Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence," *Hoisington v. Cty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999), and it is "well-established" that county jails "are merely administrative arms" of the county and "lack any independent legal identity," *Jones v. Nassau Cty. Corr. Inst.*, Nos. 14-cv-1217, 14-cv-1562, 2014 WL 1277908, at *4, 2014 U.S. Dist. LEXIS 41423, at *10 (E.D.N.Y. Mar. 26, 2014) (citations omitted). Accordingly, the Court dismisses WCCF as a Defendant.

[2] The Court notes that, in total, Plaintiff attaches fourteen documents to her opposition papers, none of which are attached to the Complaint.

282 F.3d 147, 152 (2d Cir. 2002)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted)). Even where a document is integral to the complaint, it must be "clear" that "no dispute exists regarding the authenticity or accuracy of the document" and that "there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134. "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)).

CMC Defendants submit Plaintiff's Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination. (Dkt. No. 16-3). Similarly, Plaintiff submits her EEOC Letter of Determination and two Notices of Right to Sue from March and June 2022. (Dkt. Nos. 22-7, 22-8, 22-9, 24-5, 24-6, 24-7, 24-8). Plaintiff's Complaint explicitly references these EEOC documents, (Dkt. No. 1, ¶¶ 6–9), and thus the Court will consider them, *see Taylor v. City of New York*, 207 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) ("Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference." (citation omitted)). The Letter of Determination and Right to Sue letters are also public records that are subject to judicial notice. *See Muhammad v. New York City Transit Auth.*, 450 F. Supp. 2d 198, 204–05 (E.D.N.Y. 2006) (finding EEOC's determination of the plaintiff's EEOC charge a matter of "public record[], of which this Court may take judicial notice"); *Canady v. Union 1199/SEIU*, 527 F. Supp. 3d 515, 516 n.1 (W.D.N.Y. 2021) (taking

judicial notice of an EEOC right-to-sue letter). The court considers them "in order 'to determine what statements [they] contained'—but '[] not for the truth of the matters asserted.'" *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (first alteration in original) (emphases omitted) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

Warren County submits the Warren County Board of Supervisors' Resolution No. 416 of 2016 ("Resolution No. 416"), which authorized the Chairman to enter into an agreement with CMC Defendants to provide services to inmates in WCCF. (Dkt. No. 15-2, at 2). Plaintiff's Complaint neither relies on nor references the Resolution. (*See* Dkt. No. 1). However, the Court may take judicial notice of Resolution No. 416. *See Lewis v. Livingston Cnty. Ctr. for Nursing & Rehab.*, 30 F. Supp. 3d 196, 203 (W.D.N.Y. 2014) (taking judicial notice of a county resolution).

Warren County also submits the Health Services Agreement ("HSA") between Warren County and CMC Defendants and the HSA's contract extension. (Dkt. Nos. 15-3, 15-4). CMC Defendants object to the consideration of the HSA on this motion, asserting that it is not integral to the Complaint. (Dkt. No. 25, at 8-9). The Court agrees. The HSA is neither attached to Plaintiff's Complaint nor incorporated by reference. The Complaint does not mention the HSA or in any way rest on it and the Court does not find it integral to the Complaint. [3] The Court will therefore not consider it.

---

[3] The cases Plaintiff cites—*Ocampo v. 455 Hosp., LLC*, No. 14-cv-9614, 2016 WL 4926204, 2016 U.S. Dist. LEXIS 125928 (S.D.N.Y. Sept. 15, 2016); *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 131 (2d Cir. 2001); and *Pesserillo v. Nat'l Grid*, 78 F. Supp. 3d 551 (E.D.N.Y. 2015)—do not compel a different conclusion. (Dkt. No. 23, at 22–24). In *Ocampo*, the complaint relied heavily on a franchise agreement, "expressly refer[ring] to the document eight times." 2016 WL 4926204, at *4, 2016 U.S. Dist. LEXIS 125928, at *13. In *Pesserillo*, the court deemed incorporated into the complaint an agreement and general release that the plaintiff had executed and which was "integral to [his] ability to pursue his cause of action," even though it was not referenced in the complaint. 78 F. Supp. 3d at 554 (internal citations omitted). Further, in *Yak*, the Second Circuit found that the district court properly considered agreements submitted by the defendants where both sides agreed that the plaintiff had "actual notice" of the agreements and his "complaint rest[ed] on the unstated belief that the [agreements] were voided by [] administrative decisions." 252 F.3d at 130–31.

Plaintiff submits a termination letter from CMC Defendants to Plaintiff. (Dkt. Nos. 22-1, 24-1). Although Plaintiff's Complaint states that she was terminated, it does not describe how she was terminated and does not reference a termination *letter*. (Dkt. No. 1, ¶ 42). Since the letter is not referenced in or integral to Plaintiff's Complaint, the Court will not consider it. *See Dechbery v. City of New York*, No. 14-cv-2130, 2017 WL 11683338, at *3–4, 2017 U.S. Dist. LEXIS 237107, at *8 (E.D.N.Y. Mar. 31, 2017) (declining to consider the plaintiff's termination letters in deciding a motion to dismiss).

Plaintiff also submits the CBH Employee Handbook, (Dkt. No. 22-2), which is not attached to, incorporated by reference in, or integral to the Complaint, (*see* Dkt. No. 1). Thus, the Court will not consider the Handbook. *See Barker v. Bancorp, Inc.*, Nos. 21-cv-869, 21-cv-896, 21-cv-897, 2022 WL 595954, at *6, 2022 U.S. Dist. LEXIS 34095, at *16 (S.D.N.Y. Feb. 25, 2022) (refusing to consider employee handbook attached to the defendant's motion to dismiss because it was not incorporated by reference in the complaint and, "by its own terms, [was] not a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls" (citations and internal quotation marks omitted)).

Plaintiff also submits an email and a letter from the Warren County Sheriff's Office to Plaintiff and two letters from CMC Defendants to Plaintiff's counsel. (Dkt. Nos. 22-3, 22-4, 22-5, 22-6, 24-4). Because the email and letters are neither incorporated in the Complaint by reference nor integral to the Complaint, the Court will not consider them.

Finally, Plaintiff submits printouts of the public New York Entity Information for CBH and Pennsylvania Entity Information for CMC as found on those states' Department of State websites. (Dkt. Nos. 24-2, 24-3). A court may take judicial notice of "public Entity Information" provided by a state's Department of State database. *See Fair Hous. Just. Center Inc. v.*

*Lighthouse Living LLC*, No. 20-cv-4966, 2021 WL 4267695, at *4, 2021 U.S. Dist. LEXIS

181505, at *7–8 (S.D.N.Y. Sept. 20, 2021) (taking judicial notice of "printout pages from the

New York State Department of State Division of Corporations website"). Thus, the Court takes

judicial notice of CBH's and CMC's entity information.

## III.   FACTS[4]

### A.   Background

On February 9, 2017, Plaintiff began working as a social worker for WCCF and CMC

Defendants. (Dkt. No. 1, ¶¶ 16, 30; *see* Dkt. No. 15-2). WCCF provides detention for arrested

individuals as ordered by the courts within Warren County. (Dkt. No. 1, ¶ 15). Upon Plaintiff's

information and belief, WCCF controlled the terms and conditions of Plaintiff's employment,

including oversight and direction because she worked on WCCF premises, and "the County of

Warren maintain[ed] control over the operations of WCCF, including its practices related to

hiring and firing." (*Id.* ¶¶ 19–20). CMC provides healthcare and healthcare administrative

services to correctional facilities, including WCCF. (*Id.* ¶ 22). CMC II is "associated with" CMC

and, upon Plaintiff's information and belief, CBH Medical is "an alter ego and/or successor in

interest to CMC and CMC II." (*Id.* ¶¶ 24, 25). Upon Plaintiff's information and belief, CMC,

CMC II, and CBH are "all united in interest and are functioning as subsidiaries, shells, alter egos,

and/or successor of one another." (*Id.* ¶ 26).

During her time working for Defendants, Plaintiff regularly received positive feedback

from her supervisors and colleagues and performed well on her performance review. (*Id.* ¶ 33).

Plaintiff "was frequently asked to do extra shifts, due to her competence." (*Id.*).

---

[4] These facts are drawn from the Complaint, (Dkt. No. 1), and documents the Court may consider, *supra* Section II. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

Plaintiff suffers from "a medical condition which causes occasional but severe allergic reactions," of which her supervisors and colleagues were aware. (*Id.* ¶ 31). While on duty, she experienced severe allergic reactions on four occasions. (*Id.* ¶ 34). One such allergic reaction occurred on February 22, 2018, and Plaintiff's "face swelled but she finished her shift." (*Id.* ¶ 35). The following day, Licensed Practical Nurse ("LPN") K. Nichol[5] informed Plaintiff in front of another employee that Plaintiff could not return to work without a doctor's note and "escorted her to the door." (*Id.*). LPN Nichol also informed her that, moving forward, Plaintiff would need to receive a doctor's note after having a severe allergic reaction before returning to work. (*Id.*). That same day, Plaintiff called "Human Resources"[6] and informed them that LPN Nichol violated the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") by discussing Plaintiff's medical condition in front of a coworker. (*Id.* ¶ 36).

## B.    Plaintiff's Termination

On April 6, 2018, Plaintiff experienced another allergic reaction, which resulted in an ambulance transporting her from WCCF to the local hospital. (*Id.* ¶ 38). Plaintiff returned to work at 12:30 p.m. and provided LPN Nichol with a doctor's note clearing Plaintiff for work. (*Id.* ¶ 40). By 2:00 p.m. that same day, Plaintiff was notified that she was terminated "without cause or justification." (*Id.* ¶ 41). When Plaintiff attempted to follow up about the reason for her termination, "she was advised that her 'security clearance' had been revoked." (*Id.* ¶ 42). Plaintiff alleges that WCCF informed her that CMC Defendants had revoked her security clearance, but CMC Defendants informed Plaintiff that WCCF had revoked her security

---

[5] Plaintiff's Complaint does not identify LPN Nichol's position or for which entity she worked. (*See* Dkt. No. 1).

[6] Plaintiff's Complaint fails to allege whose Human Resources Department she contacted regarding this complaint. (Dkt. No. 1, ¶ 36).

clearance. (*Id.* ¶ 43). Plaintiff alleges that she was never provided the reason that her security clearance was revoked. (*Id.* ¶ 44).

### C.   EEOC Proceedings

On or about October 18, 2018, Plaintiff filed a Charge of Discrimination against County of Warren and CMC with the EEOC alleging violations of the ADA and the NYSHRL. (*Id.* ¶ 6; Dkt. No. 16-3). On July 27, 2021, the EEOC issued a Letter of Determination finding that Plaintiff established a prima facie case of employment discrimination under the ADA based on disability and/or perceived disability. (Dkt. No. 1, ¶ 7; Dkt. No. 22-7). The Letter of Determination explains that WCCF's attorney responded to the Charge of Discrimination by stating that "the County had no record of employment for [Plaintiff]," and CMC did not respond to the Charge of Discrimination. (Dkt. No. 22-7, at 2–3). Thus, the EEOC found that Plaintiff had been subject to employment discrimination in violation of the ADA. (*Id.* at 3).

On March 16, 2022, the U.S. Department of Justice issued a Notice of Right to Sue regarding the EEOC charge against WCCF. (Dkt. No. 1, ¶ 8; Dkt. No. 22-8). On June 9, 2022, the EEOC issued a Notice of Right to Sue regarding the EEOC charge against CMC, which was sent to CBH. (Dkt. No. 1, ¶ 9; Dkt. No. 22-9).

## IV.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC*

*v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## V.    DISCUSSION

### A.    Administrative Exhaustion[7]

#### 1.    Claims Against CBH

CMC Defendants argue that Plaintiff failed to exhaust her administrative remedies against CBH because she failed to name CBH in the EEOC Charge and the identity of interest exception is not applicable. (Dkt. No. 16-1, at 9–12). In response, Plaintiff argues that all of the factors "weigh heavily in Plaintiff's favor," and thus there is an identity of interest between CMC and CBH. (Dkt. No. 23, at 16–21).

A plaintiff may bring an ADA claim "in federal court only after filing a timely charge with the EEOC and receiving an EEOC right-to-sue letter." *Johnson v. Xylem Inc.*, 613 F. Supp. 3d 677, 679 (W.D.N.Y. 2020) (first citing 42 U.S.C. § 2000e-5(e), (f); and then citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)); *see* 42 U.S.C. § 12117(a) (incorporating Title VII exhaustion requirements into the ADA). "Generally, a plaintiff can bring a lawsuit against only those entities named in the initial EEOC charge." *Frilando v. New York City Trans. Auth.*, 463 F. Supp. 3d 501, 511 (S.D.N.Y. 2020) (citations and emphasis omitted). However, "[t]he Second Circuit has adopted an 'identity of interest' test,

---

[7] Warren County argues that the action must be dismissed because Plaintiff fails to allege that she received a right-to-sue letter regarding Warren County. (Dkt. No. 15-5, at 12). However, Plaintiff alleges that she received a right-to-sue letter based on allegations against WCCF and attaches the letter to her opposition. (Dkt. No. 1, ¶ 8; Dkt. No. 22-8). Because it is "well-established" that county jails "are merely administrative arms" of the county and "lack any independent legal identity," *Jones*, 2014 WL 1277908, at *4, 2014 U.S. Dist. LEXIS 41423, at *10 (citations omitted), it stands to reason that Plaintiff receiving a right to sue WCCF is sufficient to satisfy the prerequisite to federal suit as to Warren County.

which allows a plaintiff to bring suit against parties not named in the EEOC charge if they are sufficiently related to those named."[8] *Id.* (first citing *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999); and then citing *Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 590 (S.D.N.Y. 2017)).

In analyzing whether an identity of interest exists, the Second Circuit has outlined four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; [and] 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Sullivan v. City of New York*, No. 08-cv-7294, 2011 WL 1239755, at *3, 2011 U.S. Dist. LEXIS 36381, at *7 (S.D.N.Y. Mar. 25, 2011) (citing *Vital*, 168 F.3d at 619) (applying the four factors test to an ADA claim). "No single factor is dispositive; courts weigh the factors holistically."

*Payne v. McGettigan's Mgmt. Servs. LLC*, No. 19-cv-1517, 2020 WL 2731996, at *4, 2020 U.S.

---

[8] CMC Defendants argue that Plaintiff cannot assert the identity of interest exception because courts "have restricted the identity of interest exception to plaintiffs who filed their EEOC charges pro se or with a lawyer inexperienced in Title VII [or ADA] litigation." (Dkt. No. 16-1, at 11 (alteration in original) (citations omitted)). However, district courts in this Circuit do not always treat representation at the time of the EEOC charge as dispositive. *See Gokdogan v. Slap Shot Pizza Enters. Ltd.*, No. 20-cv-5201, 2021 WL 4441417, at *10, 2021 U.S. Dist. LEXIS 184745, at *29 (E.D.N.Y. Sept. 27, 2021) (finding that there was "sufficient identity of interest" between the named and unnamed respondents in an EEOC charge and not "find[ing] [the plaintiff's] representation by counsel at the time he filed his EEOC Charge dispositive"); *Senecal v. B.G. Lenders Serv. LLC*, 976 F. Supp. 2d 199, 215–16 (N.D.N.Y. 2013) (finding that a "case-by-case evaluation of the circumstances in light of the [identity of interest] factors, as opposed to a categorical ban [on plaintiffs who were represented by counsel], far better advances the goals and purposes of Title VII," and noting that "a plaintiff's legal representation at the time of his or her EEOC filing is informative when considering the first and fourth [] factors" (citing *Manzi v. DiCarlo*, 62 F. Supp. 2d 780, 788 (E.D.N.Y. 1999))).

Dist. LEXIS 91883, at *8 (S.D.N.Y. May 26, 2020) (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241–42 (2d Cir. 1995)).

Here, in the Charge of Discrimination, Plaintiff names "County of Warren at Warren County Correctional Facility" and "Correctional Medical Care" as employers. (Dkt. No. 16-3, at 2). It does not name CBH Medical, P.C. but Plaintiff's June 6, 2022 right-to-sue letter from the EEOC reflects that the letter was sent to "CBH Medical PC" at the address Plaintiff provided for CMC in her EEOC charge of discrimination. (Dkt. No. 22-9). Regarding the first factor, Plaintiff argues that "she could not have possibly known the scope" of CMC and CBH's roles because they "function interchangeably" and "us[e] the same address." (Dkt. No. 23, at 17). However, the Court does not have sufficient information to determine whether Plaintiff could have, with reasonable effort, ascertained CBH Medical P.C.'s role at the time she filed her EEOC Complaint.

The second factor "is designed to measure whether 'the unnamed party's interests were represented adequately at the administrative proceeding.'" *Crosby v. McDonald's of Guilderland, LLC*, No. 17-cv-1160, 2018 WL 2077884, at *11, 2018 U.S. Dist. LEXIS 74168, at *31 (N.D.N.Y. May 2, 2018) (quoting *Zustovich v. Harvard Maint.*, No. 08-cv-6856, 2009 WL 735062, at *9, 2009 U.S. Dist. LEXIS 22640, at *28 (S.D.N.Y. Mar. 20, 2009)). "[C]ourts have taken into consideration that the named and unnamed parties were represented by the same legal counsel." *Zustovich*, 2009 WL 735062, at *9, 2009 U.S. Dist. LEXIS 22640, at *28–29 (citation omitted); *see Daniel v. T&M Prot. Resources, Inc.*, 992 F. Supp. 2d 302, 312 (S.D.N.Y. 2014) (explaining that, in evaluating the second factor, "use of common legal counsel in these proceedings . . . evidences [the named and unnamed parties'] shared interest" (citations omitted)). The law firm that was copied on the EEOC right-to-sue letter concerning CMC

represents all of the CMC Defendants in this action, which weighs in favor of applying the identity of interest exception. (Dkt. Nos. 11, 16, 22-9).

The third factor "weighs strongly in favor of the plaintiff if the unnamed defendant had actual notice of the EEOC charge." *Crosby*, 2018 WL 2077884, at *12, 2018 U.S. Dist. LEXIS 74168, at *31 (citation omitted). Further, the unnamed party's interests are not prejudiced where "the EEOC did not make any further investigation or engage in attempts of conciliation." *Frilando*, 463 F. Supp. 3d at 513. Although CBH Medical P.C. was sent the right-to-sue letter, (Dkt. No. 22-9), CMC Defendants argue that such notice "[did] not give CBH notice allowing it to intervene in the proceedings," (Dkt. No. 25, at 6). Moreover, it is unclear whether CBH Medical received notice of the EEOC charge prior to the right-to-sue letter, and thus it is unclear whether this factor weighs in favor of applying the exception. Finally, Plaintiff relies on her termination letter, which the Court cannot consider at this stage, in arguing that the fourth factor weighs in her favor. (Dkt. No. 23, at 19). Because there is no additional information relating to whether CBH informed Plaintiff to conduct business with it through CMC, the Court cannot evaluate this factor yet.

The Court may not consider many of the documents submitted by the parties at this stage and does not have enough information to evaluate whether these factors are satisfied. "When there is insufficient information at the motion to dismiss stage for a court to determine whether named and unnamed defendants share an identity of interest, it is appropriate to deny the motion to dismiss and revisit the issue on a motion for summary judgment." *Shannon v. Credit Agricole Sec. (USA) Inc.*, No. 17-cv-0667, 2018 WL 1474390, at *3, 2018 U.S. Dist. LEXIS 48323, at *8 (S.D.N.Y. Mar. 22, 2018) (citation omitted); *see Kurlender v. Ironside Grp., Inc.*, No. 18-cv-3839, 2019 WL 1318363, at *11, 2019 U.S. Dist. LEXIS 2822, at *30 (E.D.N.Y. Jan. 4, 2019)

("When it is unclear whether the identity of interest exception applies, courts routinely permit the unnamed parties to proceed as defendants in the action." (citations omitted)), *report and recommendation adopted* 2019 WL 1317405, 2019 U.S. Dist. LEXIS 48201 (E.D.N.Y. Mar. 22, 2019). "Ultimately, it is the plaintiff who has the burden of proving that the identity of interest exception applies." *Senecal*, 976 F. Supp. 2d at 214 (citations omitted). Thus, the Court will deny CMC's motion to dismiss on this ground. *See Stoutenger v. City of Fulton*, 605 F. Supp. 3d 432, 450 (N.D.N.Y. 2022).[9]

### 2.  Retaliation and Failure to Accommodate Claims

CMC Defendants also argue that Plaintiff failed to exhaust her administrative remedies with respect to her failure to accommodate and retaliation claims. (Dkt. No. 16-1, at 12–13).

"Ordinarily, a plaintiff seeking to bring a claim pursuant to the [ADA] must exhaust administrative remedies through the EEOC." *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (citations omitted). However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Id.* (quoting *Shah v. N.Y. Dep't of Civil Servs.*, 168 F.3d 610, 614 (2d Cir. 1999)). A claim is reasonably related to the allegations in an EEOC charge when the "conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citation omitted). In this inquiry, "the focus should be 'on the factual allegations made in the [EEOC] charge itself,'" and "[t]he

---

[9] Plaintiff argues that the Court should consider *McNeil v. Correctional Medical Care, Inc.*, where the Court declined to dismiss a plaintiff's *Monell* liability claims against CBH and CMC. No. 18-cv-894, 2019 WL 4415528, at *9, 2019 U.S. Dist. LEXIS 157466, at *26 (N.D.N.Y. Sept. 16, 2019). However, determining whether CBH and CMC are potentially subject to *Monell* liability—based on a complaint with different allegations—is not analogous to evaluating whether Plaintiff plausibly alleges an identity of interest between CMC and CBH.

central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" *Id.* (first alteration in original) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201, 202 (2d Cir. 2003)).

Here, Plaintiff's EEOC charge is devoid of factual allegations related to a failure to accommodate claim. (*See* Dkt. No. 16-3). To state a prima facie failure to accommodate claim, a plaintiff must demonstrate that "(1) [she] is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013) (citation omitted). Here, Plaintiff's charge indicates that, during a shift on April 6, 2018, she was transported to the hospital because she had an allergic reaction. (Dkt. No. 16-3, ¶ 14). However, nothing in the EEOC charge indicates the type of accommodation Plaintiff needed, that she requested such an accommodation, or that her employer refused to make the requested accommodation. (*See generally id.*). As a result, Plaintiff's charge did not give the EEOC notice to investigate a failure to accommodate claim, and her claim is not exhausted. *See Spillers v. City of New York Health and Hosps. Corp.*, No. 15-cv-6472, 2017 WL 4326505, at *3, 2017 U.S. Dist. LEXIS 160111, at *8 (E.D.N.Y. Sept. 28, 2017) (finding that the plaintiff's failure to accommodate claim was not reasonably related to his disability discrimination claim, and thus was not exhausted, where he failed to "indicate what type of assistance he requested, and to whom he made the request").

Similarly, Plaintiff's EEOC charge failed to put the EEOC on notice of a retaliation claim. (*See* Dkt. No. 16-3). "Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d

713, 719 (2d Cir. 2002) (citations omitted). Thus, for a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)). Plaintiff's EEOC charge includes a single act of disability-based discrimination: Plaintiff's termination on April 6, 2018 following her transportation to the hospital. (Dkt. No. 16-3, ¶¶ 14–16). Although Plaintiff's Complaint mentions a complaint to a Human Resources Department regarding a HIPAA violation, (Dkt. No. 1, ¶ 36), the EEOC charge mentions neither that complaint nor any other potentially protected activity, (*see* Dkt. No. 16-3). Moreover, although Plaintiff's failure to check the "retaliation" box on the EEOC charge is not dispositive, *see Jones v. N.Y.C. Dep't of Educ.*, 286 F. Supp. 3d 442, 448 (E.D.N.Y. Feb. 22, 2018) ("[I]t is well-settled that merely checking a box, or failing to check a box does not necessarily control the scope of the charge." (citations omitted)), it is relevant in evaluating whether Plaintiff put the EEOC on notice about the retaliation claim, *see Sternkopf v. White Plains Hosp.*, No. 14-cv-4076, 2015 WL 5692183, at *9, 2015 U.S. Dist. LEXIS 129996, at *28–29 (S.D.N.Y. Sept. 25, 2015) (finding that the plaintiff's retaliation claim was not reasonably related to the EEOC charge where he "described neither ADA-protected activity nor retaliatory action," and he failed to "check the retaliation box"). Thus, Plaintiff's retaliation claim is not reasonably related to her disability discrimination claim in the EEOC charge.

Accordingly, the Court grants CMC Defendants' motion to dismiss Plaintiff's failure to accommodate and retaliation claims under the ADA for failure to exhaust.

## B.     Disability Discrimination Under the ADA

The ADA prohibits discrimination against a "qualified individual on the basis of disability in regard to . . . [the] discharge of employees" and "other terms, conditions, and

privileges of employment." 42 U.S.C. § 12112(a). To state a claim for discrimination under the ADA, a plaintiff must allege that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 486 (S.D.N.Y. 2017) (quoting *Capobianco v. City of N.Y.*, 422 F.3d 47, 56 (2d Cir. 2005)). A complaint is sufficient "if it pleads specific facts that support a minimal plausible inference of such discrimination." *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016).[10]

### 1.    ADA Employer Requirement

CMC Defendants argue that Plaintiff "does not provide any information" from which the Court could plausibly infer "the employer status of the various Defendants she sues." (Dkt. No. 16-1, at 14–15). Further, CMC Defendants and Warren County each argue that Plaintiff fails to plausibly allege that they jointly employed Plaintiff. (*Id.* at 15–16; Dkt. No. 15-5, at 15). Plaintiff responds that her Complaint pleads sufficient details about each entity's involvement at this stage. (Dkt. No. 22, at 17–21; Dkt. No. 23, at 28–29).[11]

To be held liable for employment discrimination under the ADA, a defendant must have been the plaintiff's "employer." 42 U.S.C. §§ 12111(2), (5), 12112(a); *see Heller v. Consol. Rail Corp.*, 331 F. App'x 766, 768 (2d Cir. 2009) (summary order) (noting that Title VII and the ADA "apply only to discriminatory practices by an employer"). "[A] prerequisite to considering

---

[10] Defendants do not dispute that Plaintiff was qualified to perform the essential functions of her job or that Plaintiff's termination constitutes an adverse employment action that satisfies the fourth element.

[11] The Court notes that both parties heavily rely on the HSA which, as explained above, the Court cannot consider at this stage.

whether an individual is [an employee] under common-law agency principles is that the individual have been *hired* in the first instance." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 372 (2d Cir. 2006) (second alteration and emphasis in original) (citing *O'Connor v. Davis*, 126 F.3d 112, 115 (2d Cir. 1997)); *see Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 444–45 (2003) (applying federal common-law principles of agency to definition of "employee" under the ADA). "In determining whether a person has been 'hired,' we look to 'whether [a plaintiff] has received direct or indirect remuneration from the alleged employer.'" *Gulino*, 460 F.3d at 372 (alteration in original) (quoting *Fire Comm'rs of the Farmingville Fire Dist.*, 180 F.3d 468, 473 (2d Cir. 1999)). "Where no financial benefit is obtained by the purported employee from the employer, no plausible employment relationship of any sort can be said to exist." *Id.* (citation omitted).

Here, Plaintiff has not alleged who hired her, who paid her, who supervised her, or who fired her. (*See* Dkt. No. 1).[12] She thus has not plausibly alleged that any Defendant is her formal employer. *See Waterman v. N. Collins Emergency Squad, Inc.*, No. 18-cv-706, 2022 WL 3701581, at *4, 2022 U.S. Dist. LEXIS 137446, at *10 (W.D.N.Y. Aug. 2, 2022) (finding that the plaintiff "failed to allege he [was] an employee for purposes of Title VII, the ADA, and NYSHRL" where he not only "fail[ed] to allege he [was] an employee of NCES, but [he] also fail[ed] to allege he received any benefits, either directly as salary, or indirectly as remuneration"), *report and recommendation adopted* 2022 WL 3701198, 2022 U.S. Dist. LEXIS 154221 (W.D.N.Y. Aug. 26, 2022); *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 610–11, 613 (E.D.N.Y. 2017) (finding that a defendant was not the plaintiff's employer for purposes

---

[12] The Court notes that Plaintiff's EEOC charge alleges that she was "on duty as an employee of CMC at WCCF." (Dkt. No. 16-3, ¶ 14). However, Plaintiff neither includes this allegation in her Complaint nor relies upon this allegation in her response papers.

of Title VII and the ADA where the plaintiff failed to allege that the defendant could "fire, assign, or supervise [the] [p]laintiff").

Further, as CMC Defendants correctly point out, (Dkt. No. 16-1, at 6), Plaintiff's Complaint includes impermissible group pleading such that it is unclear which Defendant, if any, is Plaintiff's formal employer, (*see* Dkt. No. 1, ¶¶ 13 ("At all relevant times herein, Plaintiff was an employee of Defendants . . . ."), 58 ("Defendants wrongfully terminated Plaintiff as a result of their discriminatory animus.")). A complaint "fail[s] to satisfy th[e] minimum standard" of providing the notice required under Fed. R. Civ. P. 8(a) where it "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct," *Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) (summary order); *see Bautista v. PR Gramercy Square Condo.*, --- F. Supp. 3d ---, No. 21-cv-11093, 2022 WL 17156628, at *5, 2022 U.S. Dist. LEXIS 211742, at *13 (S.D.N.Y. Nov. 22, 2022) (evaluating the defendants' employment relationship regarding the plaintiff's, inter alia, Title VII claims and noting that "group pleading is not sufficient to hold an entity liable under the single or joint employer doctrines; concrete allegations against specific entities are required in order to create a plausible inference of an employment relationship among them" (citation omitted)).

Plaintiff also seeks to hold the Defendants responsible under the joint employer doctrine. (Dkt. No. 23, at 26). She alleges that she was "employed jointly by WCCF and the CMC Entities," without any factual details. (Dkt. No. 1, ¶ 16).  She alleges that Warren County "maintains control over the operations of WCCF, including its practices related to hiring and firing," and that WCCF "controlled the terms and conditions of Plaintiff's employment, [] includ[ing] oversight and direction [of] Plaintiff since she worked at WCCF premises, on a daily basis." (*Id.* ¶¶ 19, 20). Plaintiff alleges that CMC "operates to provide healthcare and healthcare

administrative services to correctional facilities," and that "the CMC Entities and their agents controlled the terms and conditions of Plaintiff's employment," without any further detail. (*Id.* ¶ 29). Further, Plaintiff does not provide any details regarding CBH and CMC II beyond alleging that that CMC II "is associated with CMC and [is] registered to do business in New York," that CBH "is an alter ego and/or successor in interest to CMC and CMC II," and that the three entities "are all united in interest and are functioning as subsidiaries, shells, alter egos, and/or successors of one another" and all share a suite at an address in Pennsylvania. (*Id.* ¶¶ 22–26).

In the context of the ADA, "an employee, formally employed by one entity . . . may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Vitti v. Macy's Inc.*, 758 F. App'x 153, 156 (2d Cir. 2018) (summary order) (quoting *Arculeo v. On–Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005)). "[A] joint employer relationship [exists] when two or more entities, according to common law principles, share significant control of the same employee," which "means that an entity other than the employee's formal employer has power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities, such that [the Court] may properly conclude that a constructive employer-employee relationship exists." *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 843–44 (2d Cir. 2022) (emphasis and citations omitted) (applying the joint employer analysis to a Title VII claim); *see Vitti*, 758 F. App'x at 156 (summary order) (applying the joint employer analysis to an ADA claim). "Relevant factors include commonality of hiring, firing, discipline, pay, insurance, records, and supervision." *Vitti*, 758 F. App'x at 156 (summary order) (citing *NLRB v. Solid Waste Servs., Inc.*, 38 F.3d 93, 94 (2d Cir. 1994)). However, "sparse, conclusory allegations are insufficient to . . . permit the Court to examine . . . the commonality of control required for joint employer liability." *Couch*, 2021

WL 7448476 at *11, 2021 U.S. Dist. LEXIS 256458, at *27–28 (citations omitted). Here,

because Plaintiff has failed to allege that any Defendant is her formal employer, the Court cannot

evaluate whether any remaining Defendant had significant control over the formal employer's

employees. *See Felder*, 27 F.4th at 843–44; *see also Klinkowitz v. Jamaica Hosp. Med. Ctr.*, No.

20-cv-4440, 2022 WL 818943, at *7, 2022 U.S. Dist. LEXIS 49594, at *17–18 (E.D.N.Y. Mar.

17, 2022) (dismissing the plaintiff's Title VII claim because his "conclusory allegations [were]

inadequate to support an inference that [one of the defendants] was a joint employer with [her

formal employer]" because they failed to "in any way establish control over an employee's

hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance,

and payroll" (internal quotation marks and citation omitted)).

    Accordingly, the Court grants Defendants' motions to dismiss Plaintiff's ADA claims.[13]

### 2. Disability Under the ADA

    Defendants argue that Plaintiff has failed to allege sufficient details to plausibly allege

that her allergies constitute a disability under the first prong of the ADA. (Dkt. No. 15-5, at 16;

Dkt. No. 16-1, at 17). Plaintiff responds that she has met her minimal burden at this stage and

thus her allergies are a disability under the ADA. (Dkt. No. 22, at 21–23; Dkt. No. 23, at 29–32).

    The ADA defines "disability" as: "(A) a physical or mental impairment that substantially

limits one or more major life activities of such individual; (B) a record of such an impairment; or

---

[13] CMC Defendants also argue that Plaintiff fails to allege that they are her employer under the ADA pursuant to the single employer doctrine. In Plaintiff's opposition, she argues that CMC Defendants "are significantly interrelated," (Dkt. No. 23, at 29), but does not expressly invoke the single employer doctrine. "A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise." *Popat v. Levy*, 253 F. Supp. 3d 527, 537 (W.D.N.Y. 2017) (citation omitted). In any event, Plaintiff's sparse and conclusory allegations would not allow the Court to evaluate whether CMC Defendants constitute a single employer. *See Couch v. N.Y. Daily News Co.*, No. 19-cv-5903, 2021 WL 7448476, at *11, 2021 U.S. Dist. LEXIS 256458, at *27–28 (E.D.N.Y. Mar. 23, 2021) (finding that the plaintiffs failed to plausibly allege that defendants were a single employer where they pleaded "sparse, conclusory allegations" that "[did] not permit the Court to examine the four [] factors required for single employer liability" (citations omitted)).

(C) being regarded as having such an impairment (as described in [42 U.S.C. § 12102(3)]).” 42 U.S.C. § 12102(1). Plaintiff alleges that she was disabled under subsections (A) and (C) because she suffers from a physical or mental impairment that substantially limits one or more of her major life activities and Defendants regarded her as having an impairment.

### a.   Physical or Mental Impairment Substantially Limiting One or More Major Life Activities

A physical impairment is “[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems.” 29 C.F.R. § 1630.2(h)(1). Further, “[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.” 42 U.S.C. § 12102(4)(D). Major life activities include, among others, “breathing” and “working.” *Id.* § 12102(2)(A). In determining whether a physical impairment “substantially limits” a major life activity, courts must “construe[] [the term] broadly in favor of expansive coverage.” 29 C.F.R. § 1630.2(j)(1)(i).

Plaintiff alleges that she “suffers from a medical condition which causes occasional but severe allergic reactions” and that she “suffered severe allergic reactions on four [] occasions” during her employment at WCCF. (Dkt. No. 1, ¶¶ 31, 34). She alleges that, on February 22, 2018, she suffered an allergic reaction during her shift and, although her “face swelled,” she “finished her shift.” (*Id.* ¶ 35). She further alleges that, on April 6, 2018, she suffered an allergic reaction that “was so severe [] [she] was transported from WCCF to the local hospital via ambulance.” (*Id.* ¶ 38). However, Plaintiff does not specify which medical condition causes the allergic reactions, nor does she offer symptoms caused by the allergic reaction other than her face swelling. Such allegations do not “nudge[] [her] claim[]” that she has a physical impairment “across the line from conceivable to plausible.” *Twombly*, 550 U.S. at 570; *see McCrae v. H.N.S. Mgmt. Comp.*, No. 22-cv-217, 2022 WL 16635390, at *1, *5, 2022 U.S. Dist. LEXIS 199303, at

*2, *13–14 (D. Conn. Nov. 2, 2022) (denying a motion to dismiss where the plaintiffs alleged

that, as a result of their allergic reactions, one plaintiff experienced "eye swelling, irritation and

discharge, headaches, sneezing, rashes, and burning on [a plaintiff's] hands," and another

plaintiff experienced "her throat closing, severe nausea, swelling of her tongue, and a sudden

breakout of rash and hives on her face"); *Bonnen v. Coney Island Hosp.*, No. 16-cv-4258, 2017

WL 4325703, at *7, 2017 U.S. Dist. LEXIS 145171, at *18 (E.D.N.Y. Sept. 6, 2017) (finding

that the plaintiff plausibly alleged that she suffered from a physical impairment where, as a result

of her allergic reaction, she "develop[ed] red, patchy rashes and hives on her chest, neck, face,

arms and hands, causing an intense itching, a feeling of being overheated, flushing, a burning

sensation, anxiety, and stress" (internal quotation marks omitted)), *report and recommendation

adopted* 2017 WL 4296733, 2017 U.S. Dist. LEXIS 158050 (E.D.N.Y. Sept. 26, 2017).

Moreover, Plaintiff fails to plausibly allege that her allergic reactions substantially

limited her ability to work. (Dkt. No. 23, at 31–32). Plaintiff alleges that, during one allergic

reaction, "her face swelled but she finished her shift." (Dkt. No. 1, ¶ 35). While on one occasion

she was transported to the hospital due to an allergic reaction, she "returned to work" within

hours with "a doctor's note clearing her for work." (*Id.* ¶ 40). The allegation that Plaintiff was

transported to the hospital once during her year-long employment with Defendants and

immediately returned to work does not, in and of itself, "allow the Court to draw an inference"

that her allergic reactions *substantially* limited her ability to work. *Laface v. Eastern Suffolk

BOCES*, No. 18-cv-1314, 2020 WL 2489774, at *11, 2020 U.S. Dist. LEXIS 85343, at *28

(E.D.N.Y. May 14, 2020) (citation omitted) (finding that the plaintiff failed to plausibly allege

that he had a disability because he only "ma[de] conclusory allegations that his mold allergy

substantially limit[ed] his ability to work, breathe, and perform manual tasks" and did not

"expand on those conclusory assertions"); *see Billings v. N.Y.S. Dep't of Corr. & Cmty.*

*Supervision*, No. 19-cv-11796, 2021 WL 4150925, at *9, 2021 U.S. Dist. LEXIS 173376, at *24

(S.D.N.Y. Sept. 10, 2021) (finding that the plaintiff failed to plausibly allege that diabetes

qualified as a disability because it "is not always considered a disability for ADA purposes" and

the plaintiff "fail[ed] to include any facts in the Amended Complaint that show[ed] how her

diabetes affect[ed] her life or her employment, or otherwise limit[ed] her enjoyment of any major

life activities" (citation omitted)).[14]

    Accordingly, Plaintiff fails to plausibly allege that she has a physical impairment

substantially limiting one of her major life activities.

### b.    "Regarded As" Having a Disability

    Defendants also argue that Plaintiff fails to plausibly allege that Defendants regarded her

as having a disability. (Dkt. No. 15-5, at 16; Dkt. No. 16-1, at 17). In response, Plaintiff argues

that her allegations are sufficient. (Dkt. No. 22, at 23–25; Dkt. No. 23, at 32–33).

    The ADA states that "[a]n individual meets the requirement of 'being regarded as having

such an impairment' if the individual establishes that he or she has been subjected to an action

prohibited under this chapter because of an actual or perceived physical or mental impairment

whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C.

§ 12102(3)(A); *see Hilton v. Wright*, 673 F.3d 120, 128–29 (2d Cir. 2012) (explaining that the

"regarded as" prong applies "*whether or not* the impairment limits *or is perceived* to limit a

---

[14] Plaintiff also claims in her opposition that she pleaded sufficient allergic reactions in the Complaint, including "a flushed face, difficulty breathing, and the need to be hospitalized." (Dkt. No. 22, at 22). Although Plaintiff's Complaint does allege that "her face swelled" and she needed to be transported to the hospital via ambulance during an allergic reaction, it does not allege that she experienced difficulty breathing. (*See* Dkt. No. 1, ¶¶ 35–41). The Court will not consider Plaintiff's newly alleged symptoms because "[i]t is axiomatic that the [Complaint] cannot be amended by the briefs in opposition to a motion to dismiss." *Earl v. Good Samaritan Hosp. of Suffern NY*, --- F. Supp. 3d ---, No. 20-cv-3119, 2022 WL 4087597, at *6, 2022 U.S. Dist. LEXIS 160599, at *25–26 (S.D.N.Y. Sept. 6, 2022) (first alteration in original) (internal quotation marks and citation omitted).

major life activity" (emphasis in original)). "When a plaintiff brings a claim [under the 'regarded as' prong] . . . 'the decisive issue is the employer's perception of his or her employee's alleged impairment.'" *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 633 (S.D.N.Y. 2014) (quoting *Giordano v. City of N.Y.*, 274 F.3d 740, 748 (2d Cir. 2001)). As explained above, a physical impairment is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems." 29 C.F.R. § 1630.2(h)(1).

Here, Plaintiff alleges that, following her February 22, 2018 allergic reaction, LPN Nichol "advised her in front of another employee that [Plaintiff] was unable to return to work without a doctor's note," and that "moving forward, whenever Plaintiff had a severe allergic reaction, she would have to re[ceive] a doctor's note before returning to work." (Dkt. No. 1, ¶ 35). Plaintiff also alleges that, following her transportation to the hospital for an allergic reaction on April 6, 2018, she "provided Ms. Nichol with a doctor's note clearing [Plaintiff] for work." (*Id.* ¶ 40). Further, Plaintiff alleges that she informed Human Resources that the supervisor had "discuss[ed] her medical condition in front of a co-worker and asked that the rules of HIPAA be enforced moving forward." (*Id.* ¶ 36). However, Plaintiff fails to allege who employed LPN Nichol or which entity's Human Resources Department Plaintiff contacted. Moreover, as Warren County argues, Plaintiff fails to allege that Plaintiff notified or informed the County of her disability or that the County regarded her as disabled. (Dkt. No. 15-5, at 16). Thus, Plaintiff's conclusory allegations and group references to "Defendants" throughout the Complaint are insufficient to plausibly allege that either CMC Defendants or Warren County were aware of her alleged impairment or that they regarded her as disabled. *See Everitt v. Jarvis Airfoil, Inc.*, No. 19-cv-1853, 2020 WL 7230858, at *7, 2020 U.S. Dist. LEXIS 230073, at *21–22 (D. Conn. Dec. 8, 2020) (finding that the plaintiff failed to plausibly allege that the defendant

regarded her as disabled where he "allege[d] no evidence to suggest that he or anyone else informed [the defendant] that he had a mental disability" and there was "no claim that [the defendant] ever communicated in any manner to reflect a belief that [the] [p]laintiff was mentally disabled"); *Kelly v. Kingston Sch. Dist., Inc.*, No. 16-cv-764, 2017 WL 976943, at *5, 2017 U.S. Dist. LEXIS 35079, at *13–14 (N.D.N.Y. Mar. 13, 2017) (finding that the plaintiff "fail[ed] to plausibly allege that [the] [d]efendant discriminated against him because of [his] perceived impairment" where "the complaint and proposed amended complaint fail[ed] to plausibly allege that [the] [d]efendant had any [] knowledge [of the disability] or perceived [the plaintiff] as having a disability").[15]

### C.    NYSHRL Claims

Having found no plausible ADA claim, the Court declines, in its discretion, to retain supplemental jurisdiction over Plaintiff's NYSHRL claims. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). With the dismissal of the federal claims prior to the investment of significant judicial resources, the "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Cohill*, 484 U.S. at 350)). Accordingly, Plaintiff's state law claims are dismissed without prejudice.[16]

---

[15] Having found that Plaintiff failed to plausibly allege that she had a disability or that any of the Defendants was an employer who regarded her as disabled, the Court does not address the allegations of causation.

[16] The Court notes that the parties' briefing was insufficient to address whether, in light of Plaintiff's failure to exhaust her accommodation and retaliation claims under the ADA as to CMC Defendants, all of Plaintiff's NYSHRL claims are tolled by her EEOC charge, or only those NYSHRL claims related to her EEOC charge.

## VI.    OPPORTUNITY TO AMEND

Plaintiff seeks an opportunity to amend her Complaint. (Dkt. No. 22, at 27; Dkt. No. 23, at 35). "The court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court can deny a request to amend as futile where the problem with the claim is "substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here, any amendment as to Plaintiff's unexhausted failure to accommodate and retaliation claims under the ADA against CMC Defendants would be futile. Because it may be possible for Plaintiff to assert other viable claims with better pleading, the Court grants Plaintiff's request to otherwise amend her Complaint and she may file an amended complaint within twenty-one days of this Order.

## VII.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants County of Warren and Warren County Correctional Facility's motion to dismiss (Dkt. No. 15) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims against Warren County Correctional Facility are **DISMISSED without prejudice** and Warren County Correctional Facility is terminated as a Defendant; and it is further

**ORDERED** that Defendants Correctional Medical Care, Inc., CMC Correctional Care, and CBH Medical, P.C.'s motion to dismiss (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims against Defendants Warren County, Correctional Medical Care, Inc., CMC Correctional Care and CBH Medical, P.C. are **DISMISSED without prejudice** and with leave to amend as set forth above; and it is further

**ORDERED** that any amended complaint must be filed within twenty-one days of the date of this Order.

**IT IS SO ORDERED.**

Dated: <u>May 23, 2023</u>
   Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge