**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

KATHLEEN A. INNES,

                          Plaintiff,                      1:22-cv-641 (BKS/TWD)

v.

COUNTY OF WARREN, CORRECTIONAL
MEDICAL CARE, INC., CMC CORRECTIONAL
CARE and CBH MEDICAL, P.C.,

                          Defendants.

**Appearances:**

*For Plaintiff:*
Allen A. Shoikhetbrod
Tully Rinckey PLLC
441 New Karner Road
Albany, NY 12205

*For Defendant County of Warren:*
Earl T. Redding
Roemer Wallens Gold & Mineaux LLP
13 Columbia Circle
Albany, NY 12203

Lawrence Elmen
Warren County Attorney
1340 State Route 9
Lake George, NY 12845

*For Defendants Correctional Medical Care, Inc., CMC Correctional Care, and CBH Medical,*
*P.C.:*
David S. Schwartz
David S. Schwartz Law, PLLC
30 Broad Street, 14th Floor
New York, NY 10004

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Kathleen A. Innes brings this action against Defendants County of Warren, Correctional Medical Care, Inc. ("CMC"), CMC Correctional Care ("CMC II"), and CBH Medical, P.C. ("CBH"), alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290, et seq. (Dkt. No. 30). After this Court dismissed the original Complaint without prejudice on May 23, 2023, (Dkt. No. 28), Plaintiff filed an Amended Complaint on June 13, 2023, (Dkt. No. 30). CMC, CMC II, and CBH (collectively, "CMC Defendants") again move to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 36). The motion is fully briefed. (Dkt. Nos. 46, 49). For the following reasons, the Court grants CMC Defendants' motion to dismiss with respect to the claims against CMC II but denies the motion to dismiss with respect to the claims against CMC and CBH.

## II.   FACTS

The Court presumes the parties' familiarity with its May 23, 2023 decision, which recites the factual background of the case. *Innes v. Cnty. of Warren*, No. 22-cv-641, 2023 WL 3601237, at *3, 2023 U.S. Dist. LEXIS 89500, at *6–8 (N.D.N.Y. May 23, 2023). To the extent that the Amended Complaint adds any relevant factual allegations, the Court addresses such additional facts in the course of discussing the parties' arguments below.[1]

---

[1] Such facts are drawn from the Amended Complaint, (Dkt. No. 30), and its attached exhibits. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." (citations omitted)). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

### III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a

complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'"

*Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" are

insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief

above the speculative level." *Twombly*, 550 U.S. at 555. The Court must "accept all factual

allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff."

*E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar*

*Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).

### IV.    DISCUSSION

#### A.    ADA Claims

The ADA prohibits discrimination "against a qualified individual on the basis of

disability in regard to . . . [the] discharge of employees," as well as "other terms, conditions, and

privileges of employment." 42 U.S.C. § 12112(a). A *prima facie* case of disability discrimination

under the ADA requires a plaintiff to show: "(1) the defendant is covered by the ADA; (2) [the]

plaintiff suffers from or is regarded as suffering from a disability within the meaning of the

ADA; (3) [the] plaintiff was qualified to perform the essential functions of the job, with or

without reasonable accommodation; and (4) [the] plaintiff suffered an adverse employment

action because of [her] disability or perceived disability." *Luka v. Bard Coll.*, 263 F. Supp. 3d

478, 486 (S.D.N.Y. 2017) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir.

2005)). But "a plaintiff alleging disability discrimination 'is not required to plead a *prima*

*facie* case . . . to defeat a motion to dismiss,' and 'need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage.'" *Id.* at 486–87 (quoting *Dooley v. JetBlue Airways Corp.*, 636 Fed. App'x 16, 21 (2d Cir. 2015) (summary order)).

CMC Defendants challenge the following three aspects of Plaintiff's ADA claim: 1) that she was employed by CMC Defendants; 2) that she has a disability as defined by the ADA; and 3) that she suffered an adverse employment action as a result of such discrimination. (*See* Dkt. Nos. 36-1, 49).

### 1.  Employer Requirement

In her Amended Complaint, Plaintiff states that she worked as an inmate social worker at Warren County Correctional Facility ("WCCF") "and was employed jointly by the County of Warren and the CMC Entities." (Dkt. No. 30, ¶ 27). CMC Defendants seek dismissal on the ground that the Amended Complaint fails to allege an "employer-employee" relationship between Plaintiff and CMC Defendants. (Dkt. No. 36-1, at 9–13). Specifically, CMC Defendants argue that the Amended Complaint fails to sufficiently allege "who is her direct employer, who is a joint employer, and who, if anyone, should be considered a single employer." (*Id.* at 9). Plaintiff responds that the Amended Complaint "adequately alleged" that "Defendants were her 'employers' under the ADA," that CMC Defendants and Warren County qualify as joint employers, and that "Defendants CMC and CBH are intertwined and potentially alter-egos." (Dkt. No. 46, at 13–16).[2]

---

[2] Nowhere in her memorandum of law does Plaintiff expressly refer to "single employer" liability. However, as Plaintiff alleged in her Amended Complaint that CMC, CMC II, and CBH are "united in interest and are functioning as subsidiaries, shells, alter egos, and/or successors of one another," (Dkt. No. 30, ¶ 33), and opposes dismissal of CMC and CBH on the basis that they "are intertwined and potentially alter-egos," (Dkt. No. 46, at 15), the Court construes Plaintiff's opposition as an argument that she has sufficiently alleged CMC Defendants are a "single employer" for purposes of liability under the ADA.

Under federal employment discrimination statutes, a plaintiff is required to demonstrate the existence of an employer-employee relationship. *See, e.g.*, *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006) ("[T]he existence of an employer-employee relationship is a primary element of Title VII claims."); *Morales v. N.Y. & Presbyterian Hosp.*, No. 18-cv-9711, 2019 WL 8989858, at *12, 2019 U.S. Dist. LEXIS 231605, at *34 (S.D.N.Y. Nov. 20, 2019) (naming several federal statutes, including the ADA, in which "[a]n employment relationship is fundamental to asserting a claim of employment discrimination."), *report and recommendation adopted* 2020 WL 1150136, 2020 U.S. Dist. LEXIS 42663 (S.D.N.Y. Mar. 10, 2020).[3] Whether a formal employment relationship exists is analyzed under common-law agency principles. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989) (listing factors to consider "[i]n determining whether a hired party is an employee under the general common law of agency."). "Broadly, these factors examine whether the alleged employer 'paid [the employees'] salaries, hired and fired them, and had control over their daily employment activities,' and the crux of these factors is 'the element of control.'" *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 843 (2d Cir. 2022) (citations omitted).

Additionally, the "joint employer" and "single employer" doctrines "enable an employee in certain circumstances to assert employer liability against an entity that is not formally his or her employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 197 (2d Cir. 2005). "In a joint employer relationship, 'an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same

---

[3] This requirement and the following analysis also apply to Plaintiff's claims under the NYSHRL. *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) ("An employer-employee relationship is . . . required to sustain analogous [employment discrimination] claims under the NYSHRL."); *id.* at 226 n.7 (analyzing claims under Title VII and the NYSHRL together "[b]ecause New York courts rely on federal law when determining claims under the" NYSHRL (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010))).

time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer.'" *Feringa v. Andrews*, No. 19-cv-656, 2021 WL 2036676, at *5, 2021 U.S. Dist. LEXIS 96425, at *14–15 (N.D.N.Y. May 20, 2021) (quoting *Arculeo*, 425 F.3d at 198). In contrast, "[a] 'single employer' situation exists 'where two nominally separate entities are actually part of a single integrated enterprise.'" *Arculeo*, 425 F.3d at 198 (quoting *Clinton's Ditch Coop. Co. v. N.L.R.B.*, 778 F.2d 132, 137 (2d Cir. 1985)). Examples may include "parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management." *Id.*

### a.    Plaintiff's Direct Employer

In the Amended Complaint, Plaintiff alleges that she "was employed jointly" by Warren County and CMC Defendants while working as a social worker. (Dkt. No. 30, ¶ 27). As Defendants note, she has not identified "who" of these Defendants, if any, "is her direct employer," including by identifying who paid her.  (Dkt. No. 36-1, at 9). However, drawing all reasonable inferences in favor of Plaintiff as is required at the motion to dismiss stage, *see Faber*, 648 F.3d at 104, and by examining Plaintiff's attached exhibits to her Amended Complaint, *see DiFolco*, 622 F.3d at 111, it is possible to infer that CBH was her formal employer.

"To plead a formal employment relationship, a plaintiff must allege that she was 'hired by' the putative employer." *Taylor v. Bronx Parent Hous. Network*, No. 21-cv-4890, 2023 WL 3996620, at *3, 2023 U.S. Dist. LEXIS 103219, at *8 (S.D.N.Y. June 14, 2023) (quoting *United States v. City of New York*, 359 F.3d 83, 91–92 (2d Cir. 2004)). "To establish that she was hired, a plaintiff must allege 'that she received renumeration' from the putative employer 'in some

form for her work.'" *Id.*, 2023 WL 3996620, at *3, 2023 U.S. Dist. LEXIS 103219, at *8

(quoting *City of New York*, 359 F.3d at 92).[4] In the Amended Complaint, Plaintiff describes

being interviewed by two CMC employees for the "position of Licensed Master Social Worker"

("LMSW") at WCCF. (Dkt. No. 30, ¶¶ 42–43). As alleged in the Amended Complaint, "Warren

County entered into a Health Services Agreement [(the "HSA")] with co-Defendants CMC and

CBH." (*Id.* ¶ 37). The HSA, attached to the Amended Complaint, is a contract between Warren

County and CMC, CBH, and SM Dental P.C. (Dkt. No. 30-4). Under the HSA, CBH and SM

Dental P.C. (the "P.C.s") are to provide medical and dental care, respectively, to inmates at

WCCF and CMC is to provide "management and administrative services" to the P.C.s. (*Id.* ¶¶

1.1; 2.1).

The HSA allocates the responsibility for providing services from "licensed professionals"

to CBH, while CMC is responsible for the employment of "non-licensed administrative

personnel." (Dkt. No. 30-4 ¶¶ 1.2, 2.3; *see also id.* at 21 (listing "LMSW" in the CBH staffing

matrix)). Further, the CBH Handbook (which is also attached to the Amended Complaint) states

that "a CBH Medical Health Services Administrator . . . is responsible for the hiring . . . of

contracted health care services rendered to inmates" and outlines "payday" procedures, including

that "[e]mployees will be paid every two (2) weeks on a Friday." (Dkt. No. 30-6, at 7, 19). As

Plaintiff indicates she was employed as a LMSW for the inmates at WCCF, (Dkt. No. 30, ¶ 43),

it is plausible to infer that she was hired and paid by CBH, and that CBH is thus her direct

employer. *See City of New York*, 359 F.3d at 97 (concluding "the relationship alleged here—

---

[4] CMC Defendants only challenge the first prong of the Second Circuit's two-part test for whether a person is directly employed by another. *See Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 396 (S.D.N.Y. 2019) ("'First, the plaintiff must show she was hired by the putative employer.' In order to do so, a plaintiff 'must establish that she received remuneration in some form for her work.'" (quoting *City of New York*, 359 F.3d at 91–92)). Plaintiff does not challenge the second part of the test, which involves analyzing the thirteen *Reid* factors. *Id.* at 395.

which includes the cash payment, the related benefits, and the requirement that the plaintiffs' work be useful" was sufficient at the pleading state to "establish[] the plaintiffs as employees for the purposes of Title VII").

### b.    Remaining CMC Defendants

CMC Defendants argue that Plaintiff has failed to allege facts showing that CMC, CMC II, and CBH qualify as a "single employer." (Dkt. No. 36-1, at 10–11). As noted, while Plaintiff has not explicitly stated that CMC Defendants together constitute a single employer, the Amended Complaint alleges them to be "united in interest and . . . functioning as subsidiaries, shells, alter egos, and/or successors of one another." (Dkt. No. 30, ¶ 33; *see also* Dkt. No. 46, at 15 ("The [HSA] is sufficient to establish, at this juncture, that Defendants CMC and CBH are intertwined and potentially alter-egos because they worked together to place its employees to provide medical care to the inmates at [WCCF].")). Understanding this language to imply an assertion that CMC Defendants are a "single integrated enterprise," *see Arculeo*, 425 F.3d at 198, and thus subject to single employer liability, the Court analyzes whether the Amended Complaint plausibly alleges such liability here.

 "To determine whether two separate entities should be considered a single employer for the purposes of employment discrimination claims, courts have relied on four considerations: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." *Griffin v. Sirva, Inc.*, 835 F.3d 283, 292 (2d Cir. 2016) (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240) (2d Cir. 1995)). "Although no one factor is determinative . . . control of labor relations is the central concern." *Id.* (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)). With regard to this factor, "the central question is '[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Brown*, 756 F.3d at 227 (quoting *Cook*, 69 F.3d at

1240). The Second Circuit has also stated that "[w]hether two related entities are sufficiently integrated to be treated as a single employer is generally a question of fact not suitable to resolution on a motion to dismiss." *Id.* at 226 (citations omitted).

### i.   CMC

Plaintiff has alleged that CBH and CMC "worked together to provide medical care to the WCCF inmates." (Dkt. No. 30, ¶ 38). This is reflected in the HSA, which requires that "CMC shall be the exclusive provider to the P.C.'s of" certain management services described therein. (Dkt. No. 30-4, ¶ 2.1(a); *see id.* ¶ 2.2). In considering whether Plaintiff has met her burden to show that the two entities are a single employer, she has not alleged any facts relevant to the third and fourth factors, i.e., common management and common ownership or financial control. However, Plaintiff's Amended Complaint, in conjunction with the attached HSA, does allege facts sufficient to find CBH and CMC have interrelated operations and centralized control of labor relations.

When deciding whether interrelation of operations has been sufficiently alleged between a parent and subsidiary corporation, courts have considered: "(1) whether the parent was involved directly in the subsidiary's daily decisions relating to production, distribution, marketing, and advertising; (2) whether the two entities shared employees, services, records and equipment; (3) whether the entities commingled bank accounts, accounts receivable, inventories, and credit lines; (4) whether the parent maintained the subsidiary's books; (5) whether the parent issued the subsidiary's paychecks; and (6) whether the parent prepared and filed the subsidiary's tax returns." *Han v. Kuni's Corp.*, No. 19-cv-6265, 2020 WL 2614726, at *9, 2020 U.S. Dist. LEXIS 90460, at *21–22 (S.D.N.Y. May 22, 2020) (citations omitted). While it is not clear from the Amended Complaint what is alleged to be the exact nature of the corporate relationship

between CBH and CMC,[5] such factors may present a useful guide here. And these factors, and those like them, are largely present.

CMC and CBH are not engaged in production or distribution, but CMC does handle CBH's "business planning." (Dkt. No. 30-4, ¶ 2.2(c)). CMC performs "materials management" for CBH, "including [the] purchase and stocking of office equipment and supplies and maintenance of facilities," (*id.* ¶ 2.2(f)), and establishes medical recordkeeping procedures, "subject to the P.C.'s approval and ultimate responsibility," (*id.* ¶ 2.2(q)). CMC engages in "billing and collection of accounts receivable, and accounts payable processing" for CBH, (*id.* ¶ 2.2(i)), and maintains CBH's books, (*id.* ¶ 2.2(e)). It is not specified in the HSA whether CMC issues CBH's paychecks, but CMC is charged with "administering or causing to be administered any welfare, benefit or insurance plan or arrangement of the P.C.s," (*id.* ¶ 2.2(g)), and provides, "in consultation with the P.C.s . . . administrative advice and assistance with respect to human resources management, (*id.* ¶ 2.2(h)). The HSA also states that CMC conducts "financial management" for CBH, which involves tax return preparation. (*Id.* ¶ 2.2(d) (specifying that CMC is tasked with "causing annual financial statements and tax returns to be prepared for the P.C.s, providing to the P.C.s the data necessary for the P.C.s to file their tax returns and make any other necessary governmental filings, and submitting the P.C.s' tax returns to the P.C.s for signature.")).

In addition to the factors just discussed, there are other indications that CMC and CBH's operations are interrelated. The notice provision of the HSA specifies that CBH's mail should be addressed to: "CBH Medical, P.C. c/o Correctional Medical Care, Inc." (*Id.* ¶ 7.5). CMC and

---

[5] Plaintiff alleges that CBH "is an alter ego and/or successor in interest to CMC and CMC II" and that "CMC, CMC II, and CBH are all united in interest and are functioning as subsidiaries, shells, alter egos, and/or successors of one another." (Dkt. No. 30, ¶¶ 32, 33).

CBH are also located at the same address, within the same suite. (*Id.*; *see also* Dkt. No. 30, ¶¶ 30, 32). Taking into account the HSA, the Amended Complaint allows a plausible inference that CMC is involved in CBH's operations, and that the two functionally operate as one entity that together is able to ensure the provision of medical services to inmates at WCCF.

With respect to centralized control of labor relations, courts have found the following factors to be relevant: "whether the companies have separate human resources departments and whether the entity establishes its own policies and makes its own decisions as to the hiring, discipline, and termination of its employees. Other relevant factors include whether employment applications are sent to the other entity, whether the other entity must clear all major employment decisions, and whether the entities shift employees back and forth." *Foster v. United Parcel Serv. of Am. Inc.*, No. 18-cv-1706, 2023 WL 4549316, at *7, 2023 U.S. Dist. LEXIS 121350, at *20 (S.D.N.Y. July 14, 2023) (quoting *Ferrara v. Oakfield Leasing Inc.*, 904 F. Supp. 2d 249, 263 (E.D.N.Y. 2012)). Here, too, some of these factors (and those similar to them) are present. As noted, the HSA indicates that CMC assists CBH in human resources management, (Dkt. No. 30-4, ¶ 2.2(h)), and performs related services for CBH, like the administration of benefit plans, (*id.* ¶ 2.2(g)), "credentialing support services such as application processing and information verification," (*id.* ¶ 2.2(o)), and contract negotiation, (*id.* ¶ 2.2(p)). CMC "recommend[s] new Providers," defined as the "employed or contracted licensed professionals" of the P.C.s, "for employment by the P.C.s, subject to the final approval of the P.C.s." (*Id.* ¶¶ 1.2(a), 2.2(m)). CMC also "obtain[s] for the P.C.s agreed upon insurance coverages, including but not limited to the [specified] professional liability insurance." (*Id.* ¶ 2.2(k)).

Regarding Plaintiff specifically, the Amended Complaint alleges facts indicating that CMC and CBH acted in a centralized manner to control her employment. It alleges that two

CMC employees were involved in hiring Plaintiff, and one of those employees was her direct supervisor, Registered Nurse Nichol King. (Dkt. No. 30, ¶¶ 42–43). On the day Plaintiff alleges she was notified of her termination, Plaintiff received a termination letter from a CBH human resources agent that contained a footer with the text "c/o Correctional Medical Care, Inc." (Dkt. No. 30, ¶¶ 61–62; Dkt. No. 30-5). Later, when asked about the reason for Plaintiff's termination, the CMC Director of Human Resources indicated that "we," appearing to mean CMC, "received communication from the Warren County Sherriff's Office" rescinding Plaintiff's security clearance. (Dkt. No. 30-9; *see also* Dkt. No. 30, ¶ 67). At this stage, such facts allow a plausible inference of centralized labor control between the two entities.

Considering the facts alleged in the Amended Complaint and its attached exhibits as a whole, along with *Brown*'s instruction that such questions of integration are normally not appropriate to resolve on a motion to dismiss, 756 F.3d at 226, the Court finds that Plaintiff has plausibly alleged facts supporting a single employer theory of liability with respect to CMC and CBH.[6]

## ii.   CMC II

Plaintiff's Amended Complaint and accompanying exhibits fail to allege any facts that suggest CMC II had *any* role in her employment. The sole allegations in the Amended Complaint specific to CMC II are that CMC II "is associated with CMC," is "registered to do business in New York," that "[i]ts principal office and place of business" matches the location of CMC and CBH, and that "CMC, CMC II, and CBH are all united in interest and are functioning as

---

[6] As Plaintiff has adequately pled facts suggesting single employer liability is present here, the Court declines to evaluate whether Plaintiff would be able to show CMC and CBH were together joint employers of Plaintiff, as liability under either theory is sufficient to proceed. Additionally, there is no need to analyze whether Warren County employed Plaintiff jointly with CMC and CBH at this juncture, as Warren County has not moved to dismiss the Amended Complaint.

subsidiaries, shells, alter egos, and/or successors of one another." (Dkt. No. 30, ¶¶ 31, 33; *see also id.* ¶¶ 30, 32). Such facts, which do not indicate whether CMC II is involved with the employment decisions of either CMC or CBH, cannot create liability under a single employer theory, or on any other grounds. *See Popat v. Levy*, 253 F. Supp. 3d 527, 539 (W.D.N.Y. 2017) ("[T]he Court finds that Plaintiff's Title VII claims against UBNS fail for the basic reason that the amended complaint lacks *any* factual allegations about the degree to which UBNS played a role in any aspect of his employment or shared employment decisions with the [alleged other employers].")

Accordingly, CMC Defendants' motion to dismiss Plaintiff's claims regarding CMC II is granted.

### 2. Disability Discrimination Under the ADA

#### a. Definition of Disability

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Courts are to construe this definition broadly. *Id.* § 12102(4)(A).

CMC Defendants contend that Plaintiff has not sufficiently pled that her condition, Anaphylaxis completed by Angioedema, constitutes a disability under the ADA under prong (A), nor that she was regarded as having a disability under prong (C). (Dkt. No. 36-1, at 13–15). Plaintiff claims that she has adequately established both prongs. (Dkt. No. 46, at 16–22).

#### i. Physical or Mental Impairment Substantially Limiting One or More Major Life Activities

"To establish a disability [under prong (A)], a plaintiff must: (1) 'show that she suffers from a physical or mental impairment'; (2) 'identify the activity claimed to be impaired and

establish that it constitutes a major life activity'; and (3) 'show that her impairment substantially limits the major life activity previously identified.'" *Norman v. NYU Langone Health Sys.,* 492 F. Supp. 3d 154, 163 (S.D.N.Y. 2020) (quoting *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002)). A physical impairment, as defined by Equal Employment and Opportunity Commission (EEOC) regulations,[7] is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems." 29 C.F.R. § 1630.2(h)(1). Major life activities are non-exclusively defined to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," in addition to "the operation of a major bodily function." 42 U.S.C. § 12102(2).

An impairment qualifies as a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population"; at the same time, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). "The term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." *Id.* § 1630.2(j)(1)(i). "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication." *Id.* § 12102(4)(E).

**(ii)    Physical Impairment**

---

[7] The EEOC has issued regulations to implement the ADA and its subsequent amendments. 29 C.F.R. § 1630.1. "Although the regulations are not binding, courts in the Second Circuit afford them significant deference." *Norman*, 492 F. Supp. 3d at 163 (citing *Francis v. City of Meriden*, 129 F.3d 281, 283 n.1 (2d Cir. 1997)).

Plaintiff's Amended Complaint alleges she has received a diagnosis of Anaphylaxis completed by Angioedema, "which causes occasional but severe allergic reactions." (Dkt. No. 30, ¶ 45). She explains that "[a]s a result of her medical condition, [she] suffers severe rashes, reddened skin, swelling of the face and lips, itchy eyes and ears, difficulty swallowing, some wheezing, and occasional breathing difficulties depending on the severity of the reaction." (*Id.* ¶ 46).

CMC Defendants object that Plaintiff does not specify what she is allergic to, but do not cite any support that a plaintiff in an ADA action must make such a statement to prove a disability. (*See* Dkt. No. 36-1, at 13). And as Plaintiff correctly notes, (Dkt. No. 46, at 18–19), allergies have been held to constitute a physical impairment in this Circuit, *see Bonnen v. Coney Island Hosp.*, No. 16-cv-4258, 2017 WL 4325703, at *7, 2017 U.S. Dist. LEXIS 145171, at *18 (E.D.N.Y. Sept. 6, 2017) (finding a physical impairment when the plaintiff "allege[d] that she has an allergy which causes her skin to develop red, patchy rashes and hives on her chest, neck, face, arms, and hands, causing an intense itching, a feeling of being overheated, flushing, a burning sensation, anxiety, and stress." (internal quotation marks omitted)), *report and recommendation adopted* 2017 WL 4296733, 2017 U.S. Dist. LEXIS 158050 (E.D.N.Y. Sept. 26, 2017). CMC Defendants attempt to differentiate *Bonnen* by pointing out the different symptoms involved, but do not explain why those differences are relevant to the analysis here. (Dkt. No. 49, at 7). The Court therefore concludes that, as in *Bonnen*, Plaintiff's allegations regarding her condition are sufficient to allege physical impairment.

### (ii)     Substantial Limit on a Major Life Activity

Plaintiff is not entirely clear *which* major life activities she believes are substantially limited. (*See* Dkt. No. 46, at 18 (stating that "Plaintiff has sufficiently alleged that she suffers

from a physical or medical impairment that substantially limits one o[r] more life activities," but not explicitly naming the ones she wants the Court to consider); *see also* Dkt. No. 49, at 8 ("Nowhere in Plaintiff's Opposition do the words 'Plaintiff's disability substantially limited the major life activity of [X]' appear.")). In her opposition to CMC Defendants' motion, Plaintiff seems to argue that that the facts alleged suggest an inference that her physical or medical impairment substantially limited her ability to work. (*See* Dkt. No. 46, at 19). Further, in her Amended Complaint, Plaintiff alleges symptoms including wheezing and breathing problems, suggesting a limitation on the major life activity of breathing, (*see* Dkt. No. 30, ¶¶ 46, 48); *see also McCrae v. H.N.S. Mgmt Co.*, No. 19-cv-11796, 2022 WL 16635390, at *5 n.5, 2022 U.S. Dist. LEXIS 199303, at *13 n.5 (D. Conn. Nov. 2, 2022) ("[M]ajor life activities do not need to be specifically named by Plaintiffs for the Court to consider them.").

"[F]or a disability to substantially limit the major life activity of working, the complaint must plausibly allege that the disability affected 'the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Johnson v. N.Y. State Police*, 659 F. Supp. 3d 237, 259 (N.D.N.Y. 2023) (quoting *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 137–38 (E.D.N.Y. 2015)). Plaintiff argues that her "impairment occurred so frequently that Plaintiff's supervisor . . . directed Plaintiff to obtain medical care and directed her to bring a doctor's note following her medical episodes," consequently "limiting her ability to work when she suffer[ed] from a reaction." (Dkt. No. 46, at 18 (citing Dkt. No. 30, ¶¶ 50, 51, 56, 59)). Plaintiff also notes that "she was transported to the hospital on the day of her termination." (*Id.*). CMC Defendants argue that Plaintiff fails to allege that she experienced a substantial limitation on working as the Amended Complaint "states outright that her condition did not affect her ability to perform her

16

work duties and that it was not medically necessary for her to leave her post when she suffered an allergic reaction." (Dkt. No. 36-1, at 14).

The Court agrees with CMC Defendants' assessment. Plaintiff states that "[although] the onset of the allergic reactions was uncomfortable, they did not prevent Plaintiff from performing her work duties as confirmed by Plaintiff's medical providers." (Dkt. No. 30, ¶ 47). Additionally, Plaintiff describes King's insistence that she "immediately leave her post and obtain medical care during each allergic reaction" as "not medically necessary." (*Id.* ¶ 50).  While Plaintiff claims that on one date she did need to go to the hospital due to the severity of the reaction (and returned to work later the same day), (*id.* ¶¶ 59, 60), this one-time required absence does suggest anything of her comparative inability to perform this job or a range of jobs with respect to the average person. *Cf. Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 183 (S.D.N.Y. 2023) (finding sufficient allegation of substantial limitation on ability to work when plaintiff pled that "[h]is conditions made him particularly vulnerable to the Covid-19 virus" and was advised by his cardiologist "not to travel from home for work as a result of his medical condition" (internal quotation marks omitted)).

The ADA includes "breathing" as a major life activity. 42 U.S.C. § 12102(2)(a).  Here, Plaintiff alleges that during an allergic reaction, she "suffers . . . some wheezing, and occasional breathing difficulties depending on the severity of the reaction," symptoms "which are treatable with epinephrine," (Dkt. No. 30, ¶ 46); that an onset of an allergic reaction "did not prevent Plaintiff from performing her work duties," (*id.* ¶ 47); that she "was only required to seek medical care if she experienced prolonged difficulty in breathing," (*id.* ¶ 48); and that while working at WCCF, she suffered four "severe allergic reactions," (*id.* ¶ 54).

CMC Defendants note that Plaintiff alleged "only four 'severe reactions'" in her Amended Complaint and that she does not "allege chronic breathing issues," only "occasional" ones. (Dkt. No. 49, at 8; *see also id.* at 6 ("[N]owhere in the [Amended Complaint] does it allege that Plaintiff's 'impairment' occurs frequently" and "[t]here are no allegations of any minor but frequent allergic reactions."); *id.* at 6–7 (noting Plaintiff's supervisor only began requiring her to obtain a doctor's note after experiencing an allergic reaction over a year into her employment)). A limited number of occurrences is not necessarily disqualifying. *See* 42 U.S.C. § 12102(4)(D). ("An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active."). Nor is Plaintiff's ability or lack thereof to treat her breathing difficulties with epinephrine. (*See* Dkt. No. 49, at 7 (suggesting possible discrepancy in Plaintiff's filings on whether epinephrine is used to treat Plaintiff's breathing difficulties caused by her condition)); 42 U.S.C. § 12102(4)(E) (stating the ability of Plaintiff to take medication for her condition is irrelevant to "[t]he determination of whether an impairment substantially limits a major life activity").

However, CMC Defendants are correct that Plaintiff has not met her burden at this stage. While "[c]ourts have yet to establish the extent to which a Plaintiff must allege . . . [her] claim that an impairment substantially limits a major life activity," *Laface v. E. Suffolk BOCES*, No. 18-cv-1314, 2020 WL 2489774, at *11, 2020 U.S. Dist. LEXIS 85343, at *29 (E.D.N.Y. May 14, 2020), the Court concludes that Plaintiff's references to "some wheezing" and "occasional breathing difficulties" that require medical treatment if prolonged, are wholly insufficient. These allegations are devoid of factual detail indicating how occasional difficulties breathing during an allergic reaction substantially limit her in the major life activity of breathing. *See id.* 2020 WL 2489774, at *10, 2020 U.S. Dist. LEXIS 85343, at *28  (finding the plaintiff's allegations that

"[h]e developed a physiological disorder in the form of severe allergies to mold, affecting his respiratory body system, substantially limiting major life activities of breathing and working" were insufficient to allege that his impairment substantially limited a major life activity); *see also Kelly v. N. Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 392–3 (E.D.N.Y. 2016) (explaining that despite the required broad construction of the term 'substantially limits,' it is still required that a plaintiff "'raise a right to relief above the speculative level' and 'nudge . . . claims across the line from conceivable to plausible.'" (quoting *Twombly*, 550 U.S. at 555)). The Court therefore concludes that the Amended Complaint fails to allege facts that allow a plausible inference that Plaintiff is substantially limited in the major life activity of breathing.

Plaintiff has therefore not met the pleading requirements with respect to prong (A) of the ADA's definition of disability.

### ii.    "Regarded As" Having a Disability

Plaintiff also asserts that she was regarded as having a physical impairment under prong (C). (Dkt. No. 46, at 19–22). CMC Defendants respond, arguing Plaintiff's Amended Complaint has failed to make the requisite showing. (Dkt. No. 36-1, at 15; Dkt. No. 49, at 9).

Under prong (C), "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. 12102(3)(A); *see Hilton v. Wright*, 673 F.3d 120, 128–29 (2d Cir. 2012) (explaining the change in how prong (C) is be evaluated after the enactment of the 2008 ADA Amendments Act).[8]

---

[8] CMC Defendants seem to argue that Plaintiff is required to allege that she was perceived as having an impairment that limits a major life activity. (Dkt. No. 49, at 9 (citing *Veldran v. Dejoy*, 839 F. App'x 577, 580 (2d Cir. 2021) (summary order)). Defendants misstate Plaintiff's pleading obligations, which are set forth above, and as *Veldran* concerned a motion for summary judgment, it is unavailing.

"When a plaintiff brings a claim on the basis of that [her] employer regarded [her] as disabled, 'the decisive issue is the employer's perception of his or her employee's alleged impairment.'" *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 633 (S.D.N.Y. 2014) (quoting *Giordano v. City of New York*, 274 F.3d 740, 748 (2d Cir. 2001)).

Plaintiff has met her pleading burden on this issue. CMC Defendants suggest that Plaintiff has not alleged that any of them knew of Plaintiff's disability or perceived Plaintiff as having a disability. (Dkt. No. 36-1, at 15 (citing *Kelly v. Kingston City Sch. Dist., Inc.*, No. 16-cv-764, 2017 WL 976943, at *5, 2017 Dist. LEXIS 35079, at *13–14 (N.D.N.Y. Mar. 13, 2017); (Dkt. No. 49, at 9)). But Plaintiff alleges facts from which the Court could plausibly infer that she was viewed as physically impaired. Plaintiff's Amended Complaint states that the day after experiencing an allergic reaction, King, her "CMC direct supervisor," told Plaintiff that she "was unable to return to work without a doctor's note and escorted her to the door." (Dkt. No. 30, ¶¶ 42, 55, 56). Further, "King stated that moving forward, whenever Plaintiff had a severe allergic reaction, she would have to obtain a doctor's note before returning to work." (*Id.* ¶ 56; *see also id.* ¶ 50 ("Although not medically necessary, Plaintiff was forced by RN King to immediately leave her post and obtain medical care during each allergic reaction.")). Such facts suggest that her supervisor, employed by CMC, perceived Plaintiff as disabled under the "regarded as" prong. *See, e.g., Zako v. Encompass Digit. Media, Inc.*, No. 19-cv-844, 2020 WL 3542323, at *8, 2020 U.S. Dist. LEXIS 114387, at *25–26 (D. Conn. June 30, 2020) (finding allegations of superiors' comments and reactions regarding the plaintiff's frequent need to urinate sufficient to plead he was regarded as having a disability); *Rodriguez v. Verizon Telecom*, No. 13-cv-6969, 2014 WL 6807834, at *5, 2014 U.S. Dist. LEXIS 167833, at *13 (S.D.N.Y. Dec. 3, 2014) ("Here, plaintiff alleges that his manager falsely concluded that he was under the influence based on the

manager's perception that plaintiff has a history with addiction. . . . This allegation plausibly establishes that defendant regarded plaintiff as having a mental or physical impairment." (citation omitted)).

Plaintiff has therefore adequately pled she was regarded as having a disability within the meaning of the ADA.

### 3.  Adverse Employment Action Because of Perceived Disability

CMC Defendants briefly challenge whether an adverse employment action took place. (*See* Dkt. No. 36-1, at 14–15 ("Plaintiff does not allege *any* discriminatory conduct by any Defendant as a result of any [allergic] reactions nor any discriminatory conduct by any Defendant upon learning of Plaintiff's medical condition.")). But Plaintiff's Amended Complaint points to facts that if true indicate an adverse employment action was taken because of her perceived disability.

### a.  Adverse Employment Action

"To qualify as an adverse employment action, the employer's action toward the plaintiff must be 'materially adverse' with respect to 'the terms and conditions of employment.'" *Davis v. N.Y.C Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). "An adverse employment action 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities and might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71–72 (2d Cir. 2019) (quoting *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002)).

Plaintiff's Amended Complaint puts forward one such adverse employment action, the termination of her employment. (*See* Dkt. No. 30, ¶ 61).

### b. Causation

"[T]he ADA requires a plaintiff alleging a claim of employment discrimination to prove that discrimination was the but-for cause of any adverse employment action." *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019) (citations omitted). At the motion to dismiss stage, a plaintiff making a claim of discrimination faces a relatively low burden. *See Rodriguez*, 2014 WL 6807834, at *6, 2014 U.S. Dist. LEXIS 167833, at *16 ("To survive a motion to dismiss, a plaintiff is simply required to 'set forth factual circumstances from which a discriminatory motivation can be inferred.'" (citation omitted)). "As other courts within the Second Circuit have held, temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination." *Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 27 (D. Conn. 2011) (citations omitted).

Plaintiff alleges the following facts. Approximately an hour and a half after returning from the hospital following an allergic reaction, "Plaintiff was notified that she had been terminated." (Dkt. No. 30, ¶¶ 59–61). The same day, Plaintiff received a termination letter from CBH's Corporate Human Resources Assistant indicating that the reason for Plaintiff's termination was because her security clearance was revoked. (Dkt. No. 30, ¶¶ 62–63; Dkt. No. 30-5). Plaintiff subsequently filed a Freedom of Information Law request to the Warren County Sheriff's Office seeking documentation as to the cause of the loss of her security clearance but was told that the Office had no responsive records. (Dkt. No. 30, ¶ 65; Dkt. No. 30-7). When Plaintiff attempted to follow up on the cause of her termination, the Warren County Sheriff's Office informed Plaintiff "that her security clearance was 'pulled' because of her 'separation

from employment' with CMC." (Dkt. No. 30, ¶ 66; Dkt. No. 30-8). However, the Director of

Human Resources at CMC "advised Plaintiff that her clearance had been revoked by Warren

County Sheriff's Office" and that the day prior to Plaintiff's termination, the County provided

notice of this revocation to CMC. (Dkt. No. 30, ¶ 67; Dkt. No. 30-9). Additionally, the CMC

Director of Human Resources refused to release a copy of this notification, claiming "[i]t is not

our practice to share or release communications between CMC and our clients by request." (Dkt.

No. 30, ¶ 68; Dkt. No. 30-9).

Here, the closeness in time between Plaintiff's hospitalization and her termination, along

with the contradictory nature of the reasons provided for her firing, both allow for an inference

that she was terminated as a result of her perceived disability. To the extent that CMC

Defendants contest that any Defendant was involved in Plaintiff's termination, she has identified

that a Corporate Human Resources Assistant for CBH provided her with a termination letter.

(*See* Dkt. No. 30, ¶ 62; Dkt. No. 30-5). And the CMC Director of Human Resources stated that

"we," implying CMC, "received communication from the Warren County Sheriff's Office"

rescinding Plaintiff's security clearance—the ostensible reason she was terminated from CBH.

(*See* Dkt. No. 30, ¶ 67; Dkt. No. 30-9). Accordingly, Plaintiff has made the required showing of

causation. CMC Defendants' Motion to Dismiss Plaintiff's employment discrimination claims

under the ADA is therefore denied with respect to CMC and CBH.

### B.   NYSHRL Claims

"Like the ADA . . . the NYSHRL . . . forbid[s] employers to discharge or change the

conditions of employment of an employee because of a disability." *Primmer v. CBS Studios*,

*Inc.*, 667 F. Supp. 2d 248, 261 (S.D.N.Y. 2009) (citing N.Y. Exec. L. § 296(1)(a)). Claims under

the NYSHRL are analyzed like ADA claims. *See Crosby v. Stew Leonard's Yonkers LLC*, No.

22-cv-4907, ---F. Supp. 3d---, 2023 WL 6318524, at *8, 2023 U.S. Dist. LEXIS 174166, at *22

(S.D.N.Y. Sept. 28, 2023) ("NYSHRL claims are analyzed as ADA claims." (quoting *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 76 (2d Cir. 2019))); *Ugactz v. United Parcel Serv., Inc.*, No. 10-cv-1247, 2013 WL 1232355, at *14, 2013 U.S. Dist. LEXIS 43481, at *51 (E.D.N.Y. Mar. 26, 2013) ("The elements to find discrimination under the NYSHRL . . . generally track the ADA." (citations omitted)). At the same time, the NYSHRL is not "a carbon copy of the ADA," *Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 198 (E.D.N.Y. 2012), and "there are a few differences" in the elements of each, *Ugactz*, 2013 WL 1232355, at *14, 2013 U.S. Dist. LEXIS 43481, at *51–52.

CMC Defendants argue that Plaintiff has not alleged facts that she qualifies as disabled under the NYSHRL. (Dkt. No. 36-1, at 15–16; Dkt. No. 49, at 9–10).[9]

The NYSHRL defines a disability as: "(a) a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment, provided, however, that in all provisions of this article dealing with employment, the term shall be limited to disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held." N.Y. Exec. L. § 292(21).

---

[9] CMC Defendants also argue that Plaintiff fails to allege that they are "employers" within the meaning of the NYSHRL and that Plaintiff's NYSHRL claims for retaliation and failure to accommodate are untimely. (*See* Dkt. No. 36-1, at 9, 16). The Court has already addressed CMC Defendants' employer-related arguments, *see supra* note 2, and as the Court previously dismissed Plaintiff's retaliation and failure to accommodate claims, it need not address CMC Defendants' argument regarding the timeliness of those claims, *see Innes*, 2023 WL 3601237, at *7–8, 13, 2023 U.S. Dist. LEXIS 89500, at *14–18, 32 (finding Plaintiff had not administratively exhausted her retaliation and failure to accommodate claims and stating it would be futile to re-plead these claims).

The NYSHRL contains "a broader definition of 'disability' than does the ADA"; the statute does not "require[] any showing that the disability substantially limits a major life activity." *Ugactz*, 2013 WL 1232355, at *14, 2013 U.S. Dist. LEXIS 43481, at *52 (citations omitted). The NYSHRL only requires a Plaintiff prove "a 'medically diagnosable impairment.'" *Id.* 2013 WL 1232355, at *14, 2013 U.S. Dist. LEXIS 43481, at *53 (citations omitted).

Here, as discussed, Plaintiff has adequately alleged a medically diagnosable impairment, thus she plausibly alleges a discrimination claim under the more lenient NYSHRL standard. *See id.*; *see also Pagan v. Morrisania Neighborhood Fam. Health Ctr.*, No. 12-cv-9047, 2014 WL 464787, at *4, 6, 6 n.4, 2014 U.S. Dist. LEXIS 14978, at *13, 16, 16 n.4 (S.D.N.Y. Jan. 22, 2014) (finding that although the plaintiff failed to allege that his medical conditions substantially limited a major life activity for purposes of ADA discrimination claim, allegation of a medically diagnosable impairment was sufficient to allege discrimination under the "broader" NYSHRL definition of disability).  Further, as Plaintiff sufficiently pleads a "regarded as" disability claim under the ADA, her "regarded as" claim may proceed under the NYSHRL as well. "Plaintiff sufficiently pleads a disability discrimination claim under the more rigorous ADA standard, and thus has also stated [a claim] under the NYSHRL." *Rodriguez*, 2014 WL 6807834, at *7, 2014 U.S. Dist. LEXIS 167833, at *17 (citations omitted) (finding disability claim under NYSHRL to be satisfactorily alleged when the plaintiff had pled he was "regarded as" having a disability under the ADA).

Accordingly, CMC Defendants' Motion to Dismiss Plaintiff's employment discrimination claims under the NYSHRL is denied.

### C.    Leave to Amend

Plaintiff requests leave to amend the complaint if the Court "deems more facts are necessary to satisfy the pleading standard." (Dkt. No. 46, at 25). Plaintiff states that if she were

granted leave to amend she would add facts showing "substantial limitations she suffers, the major life activities that are impacted, and who compensated Plaintiff when she was employed at the CMC Entities and Warren County." (*Id.*). Defendant opposes this request noting that "Plaintiff already had an opportunity to amend and chose to instead file another complaint with conclusory allegations and impermissible group pleading." (Dkt. No. 49, at 10).

Under Federal Rule of Civil Procedure 15(a), a party that has already "amend[ed] its pleading once as a matter of course" "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). Rule 15(a)(2) requires that a court "freely give leave when justice so requires." But the court "may, in its discretion, deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *MSP Recovery Claims, Series LLC, v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021)).

Here, Plaintiff has not provided any reason for not having included, in her Amended Complaint, the facts she now seeks to add, particularly in light of the fact that the Court's previous decision expressly identified the current deficiencies. *See Innes*, 2023 WL 3601237, at *9, 2023 U.S. Dist. LEXIS 89500, at *20 (noting that Plaintiff failed to allege "who paid her"); 2023 WL 3601237 at *10–12, 2023 U.S. Dist. LEXIS 89500, at *25–28 (discussing Plaintiff's failure to allege "a physical impairment substantially limiting one of her major life activities"). A further amendment of the Complaint in this case would unduly delay the litigation and unfairly prejudice the Defendants. "Because [Plaintiff] was already afforded an opportunity to cure the deficiencies of [her] initial complaint and failed to do so in the amended complaint, the Court deems it appropriate not to grant any further leave to replead." *Perry v. Sony Music*, 462 F. Supp. 2d 518, 520 (S.D.N.Y. 2006); *see also Catalano v. MarineMax*, No. 20-cv-4134, ---F. Supp. 3d -

---, 2023 WL 5719918, at *9, 2023 U.S. Dist. LEXIS 156593, at *26–27 (E.D.N.Y. Sept. 5, 2023) (denying Plaintiff leave to further amend in part because the "[p]laintiffs were apprised of the pleading deficiencies in" their original complaint and "already were afforded—and availed themselves of—the opportunity to replead.").

V.    **CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendants Correctional Medical Care, Inc., CMC Correctional Care, and CBH Medical, P.C.'s Motion to Dismiss, (Dkt. No. 36), is **GRANTED IN PART and DENIED IN PART**; and it is further;

**ORDERED** that Plaintiff's claims against Defendant CMC Correctional Care are **DISMISSED**; and it is further

**ORDERED** that the Defendants' Motion to Dismiss, (Dkt. No. 36), is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated:  <u>February 29, 2024</u>
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge